UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 13-80141-CR-MARRA/BRANNON

UNITED STATES OF AMERICA

vs.

GEORGE LOUIS THEODULE,

    Defendant.
_____/

PLEA AGREEMENT

The United States Attorney's Office for the Southern District of Florida ("this Office") and GEORGE LOUIS THEODULE (hereinafter referred to as the "defendant") enter into the following agreement:

1. The defendant agrees to plead guilty to Count 1 of the indictment, which count charges the defendant with Wire Fraud, in violation of Title 18, United States Code, Sections 1343 and 2.

2. This Office agrees to seek dismissal of the remaining counts of the indictment after sentencing.

3. The defendant is aware that the sentence will be imposed by the Court after considering the advisory Federal Sentencing Guidelines and Policy Statements (hereinafter "Sentencing Guidelines"). The defendant acknowledges and understands that the Court will compute an advisory sentence under the Sentencing Guidelines and that the applicable guidelines will be determined by the Court relying in part on the results of a pre-sentence investigation by the Court's probation office, which investigation will commence after the guilty

1

plea has been entered. The defendant is also aware that, under certain circumstances, the Court may depart from the advisory sentencing guideline range that it has computed, and may raise or lower that advisory sentence under the Sentencing Guidelines. The defendant is further aware and understands that the Court is required to consider the advisory guideline range determined under the Sentencing Guidelines, but is not bound to impose a sentence within that advisory range; the Court is permitted to tailor the ultimate sentence in light of other statutory concerns, and such sentence may be either more severe or less severe than the Sentencing Guidelines' advisory range. Knowing these facts, the defendant understands and acknowledges that the Court has the authority to impose any sentence within and up to the statutory maximum authorized by law for the offense identified in paragraph 1 and that the defendant may not withdraw the plea solely as a result of the sentence imposed.

4. The defendant also understands and acknowledges that the Court may impose a statutory maximum term of imprisonment of up to 20 years, followed by a term of supervised release of up to 5 years. In addition to a term of imprisonment and supervised release, the Court may impose a fine of up to $250,000 or twice the gross gain or loss from the offense, whichever is greater, and shall order restitution.

5. The defendant further understand and acknowledges that, in addition to any sentence imposed under paragraph 4 of this agreement, a special assessment in the amount of $100 will be imposed on the defendant. The defendant agrees that any special assessment imposed shall be paid at the time of sentencing. If a defendant is financially unable to pay the special assessment, the defendant agrees to present evidence to this Office and the Court at the time of sentencing as to the reasons for the defendant's failure to pay.

6. This Office reserves the right to inform the Court and the probation office of all facts pertinent to the sentencing process, including all relevant information concerning the offenses omitted, whether charged or not, as well as concerning the defendant and the defendant's background. Subject only to the express terms of any agreed-upon sentencing recommendations contained in this agreement, this Office further reserves the right to make any recommendation as to the quality and quantity of punishment.

7. This Office agrees that it will recommend at sentencing that the Court reduce by two levels the sentencing guideline level applicable to the defendant's offense, pursuant to Section 3E1.1(a) of the Sentencing Guidelines, based upon the defendant's recognition and affirmative and timely acceptance of personal responsibility. If at the time of sentencing the defendant's offense level is determined to be 16 or greater, this Office will file a motion requesting an additional one level decrease pursuant to Section 3E1.1(b) of the Sentencing Guidelines, stating that the defendant has assisted authorities in the investigation or prosecution of the defendant's own misconduct by timely notifying authorities of the defendant's intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the Court to allocate their resources efficiently. This Office, however, will not be required to make these recommendations if the defendant: (1) fails or refuses to make a full, accurate and complete disclosure to the probation office of the circumstances surrounding the relevant offense conduct; (2) is found to have misrepresented facts to the government prior to entering into this plea agreement; or (3) commits any misconduct after entering into this plea agreement, including but not limited to committing a state or federal offense, violating any term of release, or making false statements or misrepresentations to any governmental entity or

official.

8. This Office and the defendant agree that, although not binding on the probation office or the Court, they will jointly recommend that the Court make the following findings and conclusions as to the sentence to be imposed:

(1). Loss: That the relevant amount of actual, probable or intended loss under Section 2B1.1(b)(1) of the Sentencing Guidelines resulting from the offense committed in this case is more than $7,000,000 and less than $20,000,000.

(2) Victims: That the offense involved 250 or more victims, pursuant to Section 2B1.1(b)(2)(C) of the Sentencing Guidelines.

(3). Sophisticated Means: That the offense involved sophisticated means pursuant to Section 2B1.1(b)(10) of the Sentencing Guidelines.

(4) Adjusted Offense Level: That the applicable adjusted offense level under all of the circumstances of the offense committed by the defendant is Level 35.

9. The defendant unequivocally admits that the statements in the signed FACTUAL PROFFER regarding his role in the offense are true, complete, and correct, and further acknowledges that the Government could prove these facts beyond a reasonable doubt. The parties agree that, if, after the defendant has entered into this agreement, he decides not to plead guilty or, after pleading guilty, attempts to withdraw such plea, any self-incriminating statements he has made or makes in the future to any law enforcement personnel at any time, including the FACTUAL PROFFER, can be used against him for any purpose, including as evidence in the government's case-in-chief against him in any trial. In that regard, the defendant specifically waives any rights he may otherwise have under Federal Rule of Evidence 410 and Rule 11 of the

4

Federal Rules of Criminal Procedure. The parties agree that, as long as the defendant's statements are true, complete, and correct, any statements made are subject to the protections offered in USSG, Section 1B1.8 and cannot be used against him for sentencing purposes other than as contemplated by USSG, Section 1B1.8.

10. The defendant is aware that Title 18, United States Code, Section 3742 and Title 28, United States Code, Section 1291 afford the defendant the right to appeal the sentence imposed in this case. Acknowledging this, in exchange for the undertakings made by the United States in this plea agreement, the defendant hereby waives all rights conferred by Sections 3742 and 1291 to appeal any sentence imposed, including any restitution order, or to appeal the manner in which the sentence was imposed, unless the sentence exceeds the maximum permitted by statute or is the result of an upward departure and/or an upward variance from the advisory guideline range that the Court establishes at sentencing. The defendant further understands that nothing in this agreement shall affect the government's right and/or duty to appeal as set forth in Title 18, United States Code, Section 3742(b) and Title 28, United States Code, Section 1291. However, if the United States appeals the defendant's sentence pursuant to Sections 3742(b) and 1291, the defendant shall be released from the above waiver of appellate rights. By signing this agreement, the defendant acknowledges that the defendant has discussed the appeal waiver set forth in this agreement with the defendant's attorney.

11. Defendant recognizes that pleading guilty may have consequences with respect to the defendant's immigration status if the defendant is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses. Removal and other immigration consequences are the subject of a separate proceeding, however, and defendant understands that

no one, including the defendant's attorney or the Court, can predict to a certainty the effect of the defendant's conviction on the defendant's immigration status. Defendant nevertheless affirms that the defendant wants to plead guilty regardless of any immigration consequences that the defendant's plea may entail, even if the consequence is the defendant's removal from the United States.

12. The defendant is aware that the sentence has not yet been determined by the Court. The defendant also is aware that any estimate of the probable sentencing range or sentence that the defendant may receive, whether that estimate comes from the defendant's attorney, this Office, or the probation office, is a prediction, not a promise, and is not binding on this Office, the probation office or the Court. The defendant understands and acknowledges, as previously acknowledged in paragraph 3 above, that the defendant may not withdraw his plea based upon the Court's decision not to accept a sentencing recommendation made by the defendant, this Office, or a recommendation made jointly by the defendant and this Office.

13. This is the entire agreement and understanding between this Office and the defendant. There are no other agreements, promises, representations, or understandings.

WIFREDO A. FERRER
UNITED STATES ATTORNEY

Date: 10/28/13     By: *[signature]*
ROGER H. STEFIN
ASSISTANT UNITED STATES ATTORNEY

Date: 10/28/13     By: *[signature]*
CAROLYN BELL
ASSISTANT UNITED STATES ATTORNEY

6

Date: 10/22/13

PETER BIRCH
ATTORNEY FOR DEFENDANT

Date: 10/22/13

GEORGE LOUIS THEODULE
DEFENDANT

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 13-80141-CR-MARRA/BRANNON

UNITED STATES OF AMERICA

vs.

GEORGE L. THEODULE,

                Defendant.
_____/

## FACTUAL PROFFER

The United States Attorney's Office for the Southern District of Florida ("this Office") and George L. Theodule (hereinafter referred to as the "defendant") stipulate and agree that, if this case were to go to trial, the United States would make out a prima facie case of guilt against the defendant as to Count I of the indictment (wire fraud), based upon the following uncontested facts:

Beginning in or about July 2007, the defendant began holding himself out in the South Florida Haitian community as a financial wizard, who, through proven investment strategies, was able to double the money of people who invested with him in a very short period of time. In a series of meetings held with potential investors in Wellington, Florida, and elsewhere, the defendant claimed that he was a highly successful investor in stock options, among other things and could use his proven investment strategies to enrich investors. None of this was true.

The defendant proceeded to form companies in Florida, namely A Creative Capital Concepts, LLC and Creative Capital Consortium LLC, set up offices in Lake Worth, Florida, and opened bank accounts for these entities, to serve as the repository of investor monies. Over time,

1

the defendant formed, and induced others to form, investment clubs, where club members would remit money that would be furnished to the defendant for investment purposes. Between January and August 2008, approximately 100 investment clubs were formed, consisting of more than 2500 investors, who gave from $1000 to $100,000 or more, based upon the representations of the defendant that the investment would be doubled over a period of from 30 to 90 days. These investment clubs, mostly located in the Southern District of Florida, but also in New York, New Jersey and other states, included Alpha Investment Strategies, Brother's Investment Club, Creative Capital Investment, The Eagles Private Investment Club, LLC, East Broward Private Investment Club, LLC, GNL Capital. Investment Group, LLC, Innovative Investment Group, Monte Cristo Investment Club, Progressive Capital Concepts, Inc, United Investment Club, LLC, United Partners Club, LLLP and the Wealth Builders Circle, LLC. Money from these investment clubs would often be forwarded to accounts controlled by the defendant via interstate wire transfers.

Between July 2007 and December 2008, the amount of money received from investors exceeded $30 million. Meanwhile, although the defendant did deposit approximately $19 million into trading accounts – primarily with an internet trading company called Options Xpress, none of these accounts were profitable- and, in fact, the defendant fairly quickly lost all the money invested. Further, the defendant utilized a substantial amount of investor money for his personal benefit and the benefit of family members and friends.

Nevertheless, through late 2008, the defendant continued to recruit new investors and investment clubs under the false pretext that he would earn substantial returns for his investors. The defendant also continually assured investors that their money was safe and was indeed earning

profits. With respect to existing investors, the defendant initially honored requests from investors to cash out their "profits," which were represented to have "doubled" as a result of the investment program. In truth and in fact, there were no investor profits. Rather the funds used to pay older investors came from the funds of new investors - a classic Ponzi scheme. Ultimately, the defendant was unable to continue paying out returns to investors, and the scheme collapsed. As a result, thousands of investors lost millions of dollars. The parties stipulate that victim losses exceed $7 million.

With respect to Count 1 of the indictment, on or about July 23, 2008, Alpha Investment Strategies, an investment club located in Davie, Florida, wire transferred $33,300.27 from its account at Washington Mutual Bank to an account controlled by the defendant at the Bank of America. The transfer was made through a Federal Reserve Bank located in New Jersey, and was made for the purpose of investing the funds in the defendant's trading programs.

WIFREDO A. FERRER
UNITED STATES ATTORNEY

Date: 10/28/13        By: _____
                           ROGER H. STEFIN
                           ASSISTANT UNITED STATES ATTORNEY

Date: 10/28/13        By: _____
                           CAROLYN BELL
                           ASSISTANT UNITED STATES ATTORNEY

Date: 10/14/13        _____
                       PETER BIRCH
                       ATTORNEY FOR DEFENDANT

Date: 10/14/13        _____
                       GEORGE L. THEODULE
                       DEFENDANT

3